638 F.2d 670
 1980-81 Trade Cases 63,702
 JEFFERSON-PILOT FIRE & CASUALTY COMPANY, a North Carolina
corporation, Appellant,
v.
BOOTHE, PRICHARD & DUDLEY, a Virginia partnership, E. Waller
Dudley, William W. Koontz, Fairfax S. McCandlish, A. Hugo
Blankingship, Jr., Carrington Williams, John S. Stump, Edgar
Allen Prichard, Haynie S. Trotter, Fred C. Alexander, Jr.,
R. Dennis McArver, Richard R. G. Hobson, Philip Tierney, J.
Jay Corson, IV, Stanley M. Franklin, Arthur P. Scibelli,
James Howe Brown, Jr., Charles S. Perry, Courtland L.
Traver, R. Terrence Ney, Michael T. Bradshaw, Thomas L.
Appler, Thomas C. Brown, Jr. and Carson Lee Fifer, Jr.,
partners comprising the firm of Boothe, Prichard & Dudley,
Appellees.
JEFFERSON-PILOT FIRE & CASUALTY COMPANY, a North Carolina
corporation, Appellee,
v.
BOOTHE, PRICHARD & DUDLEY, a Virginia partnership, E. Waller
Dudley, William W. Koontz, Fairfax S. McCandlish, A. Hugo
Blankingship, Jr., Carrington Williams, John S. Stump, Edgar
Allen Prichard, Haynie S. Trotter, Fred C. Alexander, Jr.,
R. Dennis McArver, Richard R. G. Hobson, Philip Tierney, J.
Jay Corson, IV, Stanley M. Franklin, Arthur P. Scibelli,
James Howe Brown, Jr., Charles S. Perry, Courtland L.
Traver, R. Terrence Ney, Michael T. Bradshaw, Thomas L.
Appler, Thomas C. Brown, Jr. and Carson Lee Fifer, Jr.,
partners comprising the firm of Boothe, Prichard & Dudley, Appellants.
 Nos. 79-1628, 79-1646.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 8, 1980.
Decided Dec. 30, 1980.
 
 Ralph Boccarosse, Jr., Arlington, Va. (Siciliano, Ellis, Sheridan & Dyer, Arlington, Va., on brief), for appellant.
 Michael McGettigan, Alexandria, Va. (George F. West, Jr., Murphy, McGettigan, McNally & West, Alexandria, Va., on brief), for appellees.
 Before WINTER, Circuit Judge, FIELD, Senior Circuit Judge, and ERVIN, Circuit Judge.
 ERVIN, Circuit Judge.
 
 
 1
 The Virginia law firm of Boothe, Prichard & Dudley sued Jefferson-Pilot Fire & Casualty Company to recover damages for Jefferson-Pilot's failure to defend Boothe, Prichard under its professional liability policy in a civil antitrust suit (the Kahn suit).[1] The district court granted Boothe, Prichard summary judgment on the issue of liability, denied it attorney's fees incurred in bringing the instant action, and deferred the question of damages for later trial. At the subsequent trial the jury awarded Boothe, Prichard $74,027.17 (with interest) for legal expenses incurred in defending and settling the Kahn suit and $6,000 (with interest) for settlement costs. The district court entered final judgment against Jefferson-Pilot at the conclusion of the trial on August 27, 1979. Jefferson-Pilot appeals the determination of liability as well as an evidentiary ruling at trial restricting evidence on the issue of the reasonableness of legal fees for the Kahn suit, while Boothe, Prichard appeals denial of attorney's fees for the present action. We affirm the district court's determination of liability and denial of counsel fees to Boothe, Prichard in the instant suit but vacate the damages award and remand the case to the district court for a new trial on that issue.
 
 I.
 
 2
 In 1976, Jack Kahn and others commenced a class action against Boothe, Prichard, its then partner, William Bauknight, and Suburban Savings and Loan Association (also of Virginia) to recover damages for and to obtain injunctive relief from alleged antitrust violations under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1-2, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26. The Kahn complaint alleged that Suburban and Boothe, Prichard unlawfully contracted and conspired to require Suburban's borrowers to use Boothe, Prichard for legal work involved in obtaining real estate loans. The complaint also alleged that Boothe, Prichard conspired with other unnamed attorneys to fix fees by adhering to a local fee schedule.[2]
 
 
 3
 Upon service of the Kahn complaint, Boothe, Prichard hired the Washington, D.C. law firm of Hogan and Hartson to represent it in the suit. Boothe, Prichard carried a professional liability policy issued by Jefferson-Pilot, and believing that the policy covered the allegations in the Kahn complaint, Boothe, Prichard notified Jefferson-Pilot of the suit. Jefferson-Pilot concluded that the policy did not cover alleged antitrust violations and so informed Boothe, Prichard. Hogan and Hartson then continued to represent Boothe, Prichard in the suit. The Kahn plaintiffs eventually agreed to settle for a total of $18,000, of which amount Boothe, Prichard was liable for $6,000. Hogan and Hartson charged Boothe, Prichard $74,027.17 for legal fees and related expenses, which Boothe, Prichard paid in several installments.
 
 
 4
 Boothe, Prichard subsequently wrote to Jefferson-Pilot in 1977 and again in 1979 to inform it of the settlement costs and legal fees. The carrier responded on both occasions by reiterating its conclusion that the policy did not afford coverage. Boothe, Prichard accordingly brought suit against Jefferson-Pilot on March 30, 1979 for breach of its contractual obligation to defend the Kahn suit. Boothe, Prichard then moved for and was granted summary judgment by the district court on the issue of liability. At the later trial for damages, the court found that an inquiry into the necessity of legal services actually provided was improper and refused to allow Jefferson-Pilot to attack Boothe, Prichard's claim for legal fees on that basis. The jury then returned a verdict for the entire amount of the settlement costs and legal fees paid to Hogan and Hartson.
 
 II.
 
 5
 The relevant provisions of the insurance policy read as follows:
 
 I. Coverage
 
 6
 To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages resulting from any claim made against the insured arising out of the performance of professional services for others in the insured's capacity as a lawyer ... and caused by any act, error or omission of the insured or any other person for whose acts the insured is legally liable.
 
 
 7
 II. Defense, Settlement, Supplementary Payments
 
 
 8
 As respects such insurance as is afforded by the other terms of this policy the company shall:
 
 
 9
 (a) defend in his name and behalf any suit against the insured alleging such act, error or omission and seeking damages on account thereof, even if such suit is groundless, false or fraudulent....
 
 EXCLUSIONS
 This policy does not apply:
 
 10
 (a) to any dishonest, fraudulent, criminal or malicious act or omission of the insured....
 
 
 11
 Under the above policy provisions concerning defense of the insured, Jefferson-Pilot's duty to defend was broader than its obligation to pay claims. Under Virginia law, which controls in this diversity action, a carrier's duty to defend under this kind of policy arises whenever the complaint alleges facts, some of which would, if proved, fall within the risk covered by the policy. Lerner v. General Insurance Company of America (Safeco), 219 Va. 101, 245 S.E.2d 249 (1978). The carrier's refusal to defend on the basis of ambiguous allegations, moreover, is at its own risk, and it will be liable to its insured if, upon development of the facts, the allegations turn out to state a compensable claim. London Guarantee & Accident Company, Ltd. v. C. B. White and Brothers, Inc., 188 Va. 195, 49 S.E.2d 254 (1948).
 
 
 12
 We therefore must inquire whether any of the allegations in the complaint stated a compensable claim. We keep in mind two Virginia rules. First, where language in an insurance policy is susceptible of two constructions, it is to be construed liberally in favor of the insured and strictly against the insurer. Fidelity and Casualty Company of New York v. Fratarcangelo, 201 Va. 672, 112 S.E.2d 892 (1960). Second, where two interpretations equally fair may be made, the one which permits a greater indemnity will prevail. Ayres v. Harleysville Mutual Casualty Co., 172 Va. 383, 2 S.E.2d 303 (1939). With these rules in mind, we conclude that the allegations of antitrust violations, if proved, would arguably have required coverage.
 
 
 13
 While unlawful behavior by attorneys in violation of the antitrust laws is not what we think of as classic malpractice, the coverage provisions in the policy, construed favorably to Boothe, Prichard provide indemnification for acts other than traditional malpractice. In short, the policy as written is not simply a malpractice policy. The policy states that Jefferson-Pilot will pay Boothe, Prichard's damages resulting from a claim made against the firm "arising out of the performance of professional services for others in the insured's capacity as a lawyer ... and caused by any act ... of the insured." It is a legitimate and perfectly reasonable interpretation of this language to consider the alleged antitrust violations as "arising out of" Boothe, Prichard's performance of professional services for Kahn and the other plaintiffs in its legal capacity. Furthermore, since the damages claimed by those plaintiffs flowed from the alleged behavior of Boothe, Prichard, the causation requirement in the language of coverage is met. The policy language thus is broad enough to be construed as encompassing the alleged antitrust violations. Jefferson-Pilot, therefore, had a duty to defend Boothe, Prichard against the Kahn suit, which it breached.
 
 
 14
 The exclusionary clause in the policy fails to save Jefferson-Pilot from liability. The clause states that the policy does not apply to any "dishonest, fraudulent, criminal or malicious" acts. While antitrust violations are unlawful, we do not think that the allegations in the Kahn complaint automatically warrant a conclusion of "dishonest, fraudulent, criminal or malicious" behavior on Boothe, Prichard's part. The exclusionary terms must be narrowly construed because they favor the carrier, and since the moral quality of the alleged acts is ambiguous at best and certainly susceptible of more than one interpretation, we conclude that the allegations in the Kahn complaint do not necessarily fall within the exclusionary clause. We recognize that Virginia law places no obligation on an insurer to defend an action against its insured when, under the complaint's allegations, the insurer would not be liable for any recovery. Travelers Indemnity Co. v. Obenshain, 219 Va. 44, 245 S.E.2d 247 (1978). Jefferson-Pilot, however, cannot excuse on that basis its failure to defend, since the allegations in the Kahn complaint cannot be interpreted as describing acts necessarily excluded from coverage.
 
 
 15
 We have interpreted a lawyer's professional liability policy in similarly broad fashion, see Donnelly v. Transportation Insurance Company, 589 F.2d 761 (4th Cir. 1978). In Donnelly we held that under District of Columbia law the insurance companies involved had wrongfully refused to defend an attorney under his professional liability policy, the provisions of which were virtually identical to those involved in this matter. Donnelly was sued by a former client, the complaint alleging in part that he had sold certain of the client's securities without authorization and that he had misused a large sum of her money. These allegations against Donnelly, like those against Boothe, Prichard in the Kahn suit, involved acts by an attorney in his professional capacity which resulted in damage to his client but which did not directly concern the quality of legal work performed for the client.[3] We considered various interpretations of the allegations in that complaint, some of which characterized the attorney's alleged acts as falling within the policy's exclusionary clause. Like the exclusionary clause at hand, it excluded coverage for dishonest, fraudulent, criminal or malicious acts. We concluded, however, that because at least some of the allegations could be viewed as stating liability potentially covered by the policy the insurance companies had a duty to defend Donnelly.[4]
 
 
 16
 We conclude in this case as well that because the Kahn complaint alleged acts which, if proved, would have arguably triggered coverage and which did not automatically fall into the exclusionary clause, Jefferson-Pilot had the duty to defend Boothe, Prichard against the suit, and that the district court was correct in so holding.
 
 III.
 
 17
 We turn now to the trial for damages. At trial, the district court refused to allow Jefferson-Pilot's counsel to pursue, either by cross examination or by presentation of expert testimony, the necessity for certain legal services performed by Hogan and Hartson for Boothe, Prichard. Jefferson-Pilot objected to the ruling and preserved the objection for appeal. We conclude that the trial judge erred by excluding what we consider to have been relevant testimony. Inquiry into the necessity of legal services appears to be legitimate in assessing and awarding reasonable attorney's fees in Virginia. Maupin v. Maupin, 158 Va. 663, 164 S.E. 557 (1932).[5] We therefore vacate the damages award to Boothe, Prichard and remand the case for a new trial on the issue of damages.
 
 IV.
 
 18
 Finally, we consider Boothe, Prichard's appeal of denial of counsel fees for bringing the instant action. While we understand Boothe, Prichard's unhappiness at having to use its own resources in order to sue Jefferson-Pilot, we are obliged to follow the well settled Virginia rule that absent a contractual obligation or statutory provision to the contrary, a party sued for breach of contract and found liable does not have to compensate the injured party for its costs in bringing the action. Hiss v. Friedberg, 201 Va. 572, 112 S.E.2d 871 (1960). In City of Virginia Beach v. Aetna Casualty and Surety Co., 426 F.Supp. 821 (E.D. Va.1976), moreover, the court specifically applied the Hiss rule to deny an insured costs of bringing a suit against its insurer for wrongful refusal to defend it in another suit. We are aware of no contractual obligation or statutory provision which would allow fees in this case, and accordingly we affirm the district court's denial of counsel fees to Boothe, Prichard for the present action.
 
 
 19
 The judgment is therefore affirmed in part, vacated in part, and remanded to the district court for a new trial on damages in accordance with this opinion.
 
 
 20
 AFFIRMED IN PART; VACATED IN PART AND REMANDED.
 
 
 
 [1]
 Jurisdiction is based upon 28 U.S.C. § 1332 (diversity of citizenship)
 
 
 [2]
 The original complaint, filed on July 7, 1976, was amended on July 29, 1976, to add additional named plaintiffs. With the exception of a shift to plural usage in references to plaintiffs, the relevant provisions of the amended complaint are identical to those in the original complaint, which was the complaint upon which Jefferson-Pilot made its initial determination. The amended complaint states in relevant part:
 
 
 [15]
 Throughout all or most of the period pertinent to this action, defendant Suburban has required its borrowers, as a condition to receiving a loan, to purchase certain legal and related services from defendants Bauknight and Boothe Prichard. By tying the purchase of services from said defendants to the borrowing of money defendant Suburban has engaged in an unlawful contract and conspiracy in restraint of the aforesaid trade and commerce in the offering for sale and sale of legal and related services in violation of Section 1 of the Sherman Act
 
 
 [16]
 Throughout all or most of the period pertinent to this action, defendant Bauknight served on the Board of Directors of Suburban and, except for the period subsequent to March, 1976, as a senior partner of defendant Boothe Prichard. In the course of his performance of these functions defendant Bauknight conspired with officials of defendant Suburban and with other partners of defendant Boothe Prichard to insure that all borrowers of defendant Suburban purchase certain legal and related services from defendants Bauknight or Boothe Prichard as a condition to being granted a loan. This arrangement among the three defendants constitutes an unlawful contract and a conspiracy in restraint of the aforesaid trade and commerce in the offering for sale and sale of legal and related services and an attempt to monopolize said commerce in violation of Sections 1 and 2 respectively of the Sherman Act
 
 
 [17]
 Throughout all or most of the period pertinent to this action defendants Bauknight and Boothe Prichard have set their fees for services performed for borrowers of defendant Suburban according to a fee schedule established by the Fairfax County Bar Association. The establishment of the fee schedule and defendants' adherence to it constitute a conspiracy between said defendants and other attorneys not parties to this action to raise, fix and maintain the fees for legal services in violation of Section 1 of the Sherman Act
 
 
 [18]
 The aforesaid contracts and conspiracies and attempts to monopolize have had the following effects, among others, on the individual plaintiffs and the class which they represent:
 (a) Plaintiffs have been compelled to purchase legal and related services from attorneys not of their choosing at fees greater than those which could be obtained elsewhere and of a quality not best suited to their individual needs.
 (b) As a direct result of the acts of the defendants described herein plaintiffs and the class which they represent have suffered injury to their business and property in an amount to be determined at a later stage in this proceeding.
 
 
 [3]
 For other opinions liberally construing attorneys' professional liability policies to include coverage for acts or omissions not directly related to the substantive quality of legal services provided to clients see Sachs v. St. Paul Fire & Marine Insurance Co., 303 F.Supp. 1339 (D.D.C. 1969); Conner v. Transamerica Insurance Company, 496 P.2d 770 (Okl.1972); Transcontinental Insurance Co. v. Faler, 9 Wash.App. 610, 513 P.2d 864 (1973)
 
 
 [4]
 To the extent Donnelly implies that an insurance carrier under the law of the District of Columbia must provide a defense even if the complaint allegations clearly fall within the exclusionary clause of a policy, we distinguish it from this case. In our view, requiring a carrier to provide a defense in a case where the allegations can only be construed as falling within the exclusionary clause would violate Virginia law as expressed in Travelers Indemnity Co. v. Obenshain, 219 Va. 44, 245 S.E.2d 247 (1978)
 
 
 [5]
 In Maupin, the Virginia Supreme Court held erroneous an instruction to the jury which obliged it to consider the necessity of services performed by an attorney in setting reasonable attorney's fees, because the logical inference from that instruction that all the services rendered were not necessary was not supported by the evidence. By implication, we conclude that in Virginia, evidence related to the necessity of legal services rendered may be material and relevant in assessment of reasonable attorney's fees