# Richmond

FIDELITY AND CASUALTY COMPANY OF NEW YORK v. DANTE FRATAR-
CANGELO, ET AL., ETC.

March 7, 1960.

Record No. 5038.

Present, All the Justices.

The opinion states the case.

*Alexander H. Sands, Jr.* (*Sands, Marks & Sands,* on brief), for the plaintiff in error.

*James G. Harrison* (*Harrison & Harrison,* on brief), for the defendants in error.

WHITTLE, J., delivered the opinion of the court.

■ This is a declaratory judgment proceeding brought for the purpose of construing a policy of liability insurance issued by the Fidelity and Casualty Company of New York, hereinafter called Fidelity, to Dante Fratarcangelo and Harry Fratarcangelo, T/A Hopewell Iron and Steel Company, hereinafter called the insured.

The petition for declaratory judgment filed by the insured against Fidelity alleged that for a number of years the insured had been engaged in the business of handling and selling used iron and steel products, and in connection with insured's operation of such business Fidelity issued to them a certain policy of insurance; that during the course of business the Fratarcangelos sold to one Willie Edward King a laundry stove; that at the time of the sale and upon insured's premises, insured's servants or employees plugged certain outlets in the stove, which act of so plugging said outlets is alleged by King to have been negligence on the part of the insured; that King, after the purchase, removed the stove from insured's premises, took it to his home, and upon the first occasion of use the stove exploded, injuring two of King's minor children. These infants, in asserting their claim for damages against the Fratarcangelos, charge that the act of plugging the outlets was negligence on the part of the insured which proximately caused the explosion and resultant injuries.

It is this claim which the insured, while denying liability, has called upon Fidelity to defend, and which Fidelity denies was covered under its policy, a copy of which was filed with the pleadings.

To the petition Fidelity filed a demurrer saying:

"* * * The petition herein fails to state a cause of action against this defendant for the following reasons:

"(1) The policy here involved insures the named assured for his loss under Division 1 only of coverage A and B and not under Division 2, 3 or 4.

"(2) Under the allegations of the petition herein the accident resulting in the injuries in question occurred (a) after the insured's operation as to the stove were completed and (b) away from the premises of the insured and would, therefore, constitute a 'completed operation' as defined under I Definition of Hazards—Division 4 Subsection (2) of the policy in question.

"(3) Under the heading 'Exclusions,' Par. (2) 'Completed Operations' as defined under I, Division 4 (2) are expressly excluded from coverage under Division 1.

"(4) As the petitioner did not have, or pay premium for cover-

age under Coverage A, Division 4, and since this accident falls only under Coverage A, Division 4, there is no coverage for this accident under the policy in question."

The demurrer was overruled by the trial court, and Fidelity filed its answer; whereupon the insured filed a motion for summary judgment.

In answering the motion Fidelity stated "* * * the only defense it makes to the petition for declaratory judgment is based entirely upon the true meaning and intendment of the policy of insurance issued by it to plaintiffs, that such defense was heretofore raised, presented and argued on demurrer herein, and has been decided adversely to this defendant's contentions. It therefore agrees that there is no controverted issue of fact or issue of law remaining to be decided in this case."

Whereupon the trial court entered its final order in which it adjudged that the policy of insurance mentioned in the petition did cover, apply to and protect the petitioners as alleged. Rule 3:20.

From this order we granted Fidelity an appeal.

The sole issue in the case is whether, under the facts alleged, the policy issued to the Fratarcangelos covers their liability, if any, to the King children; it being Fidelity's contention that the coverage was expressly excluded under the terms of the policy.

Under the policy Fidelity agrees with the insured:

"* * * Subject to the limits of liability, exclusions, conditions and other terms of this policy:

"I Coverage A—Bodily Injury Liability,
"to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, * * * sustained by any person, caused by accident."

On the face of the policy there are listed the various hazards which might be covered by the policy if the insured desires such coverage and pays the premium therefor. These hazards are listed thus:

"(1)   Premises—Operations
"(2)   Elevators
"(3)   Independent Contractors
"(4)   Products—Completed Operations."

Opposite the hazards for which insured purchased coverage there was typed in the amount of advance premium which insured paid for such coverage. The entry of this premium figure con-

trolled what coverage the insured sought and paid for. In the policy, above this section, it is provided:

"The insurance afforded is only with respect to such and so many of the following coverages and divisions thereunder as are indicated by specific premium charge or charges."

Opposite the hazard (number 1) "Premises—Operations", there has been typed the advance premium of $119.68.

We are not here concerned with Item No. 2 "Elevators", nor Item No. 3 "Independent Contractors."

Opposite the hazard (number 4) "Products—Completed Operations" there is no premium typed. Therefore this hazard was not covered.

The problem before the court therefore is whether the act of plugging the outlets (assuming this was negligence) falls under No. 1—"Premises—Operations", as contended by the insured, or No. 4—"Products—Completed Operations", as contended by Fidelity.

Fidelity contends that their position is correct, for they say if we look under the heading "Exclusions", we find "This Policy does not apply:

"(c) Under Division 1, of the definition of hazards, to * * * the Products—Completed Operations hazard."

But if we look further to the definition of hazards insured against, we find that Division 1 (with which we are here concerned) is defined as follows:

"(1) Premises—Operations—The ownership, maintenance or use of premises, and all operations."

Division 4, "Products—Completed Operations", is defined as:

"(2) Operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement."

Thus it is contended by Fidelity that under "Exclusions"— "This policy does not apply: (c) Under Division 1 of the Definition of Hazards, * * * to * * * the Products—Completed Operations hazard." They say that the operation was a completed operation and the accident occurred off the premises, therefore as the operation is covered under Division 4 ·(for which there was no insurance

coverage) it is excluded from coverage under Division 1 by virtue of Exclusion (c).

As we interpret their contention it is that Division 1 was intended to provide coverage for "all operations" of the insured but that subsequently Division 4, paragraph 2, was written to take away certain operations included in Division 1 but that all other operations other than those taken away by paragraph 2 were retained in Division 1 in its all-embracing terms.

On the other hand the insured contends that the policy should be construed as if the various insuring agreements were written at the same time, with the idea of providing different forms or types of coverage, and were intended to be mutually exclusive. Thus they say that Division 1 was not intended to include any part of Division 4, and vice versa, and that in view of the wording of the division the logical differentiation is that Division 1 was intended to cover operations on the premises, and Division 4 was to cover operations off the premises.

It is manifest that both Division 4 and Division 1 were intended to operate, not as exclusion clauses, but insuring agreements where the coverage afforded under each is different and mutually exclusive from that afforded by the other.

It is hardly conceivable that Fidelity intended to give coverage in one insuring division and take it away in another division of coverage. Too much emphasis is placed by Fidelity's construction of the policy upon the location of the accident as distinguished from the location of the operation which would also be the location of the negligence. Certainly the negligent act here complained of took place on the insured's premises and the policy was intended to cover injuries or damages resulting from negligence.

Division 4 was intended to provide coverage where both the completed operation and the accident occurred off the premises, and Division 1 was intended to provide coverage where the operation occurred on the premises. The operation involved in this litigation, that of the converting of an inherently innocuous instrument into a dangerous one and selling it as such, occurred on the premises. Therefore since Division 4 coverage applies only to operations occurring off the premises the operation here in question is not covered by Division 4 and therefore is not excluded from Division 1.

The cases relied upon by Fidelity (*U.S. Sanitary Specialties Corp.* v. *Globe Indemnity Co.*, 204 F. 2d 774; *Cooney* v. *Liberty Mutual*

*Ins. Co.* (N.Y.1954), 8 Fire and Casualty Cases 415; and *Pan American Ins. Co.* v. *Cooper Butane Co.,* (Texas 1957), 9 Fire and Casualty Cases 152) deal with situations where the coverage of operations was off the premises, as contrasted with operations on the premises as in the instant case.

We hold that the "operation", which consisted of the alleged negligent act of plugging the outlets in the stove, was not "completed" until King, to whom the stove was sold, had an opportunity to put it to use. *Reed Roller Bit Co.* v. *Pacific Employers Ins. Co.,* 198 F. 2d 1, 3.

█ This interpretation is fortified by the rule that where the language of the policy is susceptible of two constructions, as manifested in argument, it is to be construed strictly against the insurer and liberally in favor of the insured. 10 Mich. Jur., Insurance, § 25, pp. 315, 316, and cases there cited.

For the reasons stated the judgment is

*Affirmed.*