828 F.2d 242
 JOSEPH P. BORNSTEIN, LTD., a Virginia professional
corporation; Joseph P. Bornstein, Plaintiffs-Appellants,
v.
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a
Pennsylvania corporation, Defendant-Appellee.
 No. 86-2658.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 9, 1987.
Decided Sept. 14, 1987.
Rehearing Denied Nov. 16, 1987.
 
 Thomas Hylden (Sachs, Greenebaum & Tayler, Washington, D.C., Herbert S. Rosenblum, Rosenblum & Rosenblum, Alexandria, Va., on brief), for plaintiffs-appellants.
 David P. Durbin (Mary Ann Snow, Paul D. Krause, Jordan, Coyne, Savits & Lopata, Washington, D.C., on brief), for defendant-appellee.
 Before WIDENER and ERVIN, Circuit Judges, and JOSEPH FLETCHER ANDERSON, JR., United States District Judge for the District of South Carolina, sitting by designation.
 ERVIN, Circuit Judge:
 Plaintiffs Joseph P. Bornstein, Ltd., and Joseph P. Bornstein (hereinafter collectively referred to as "Bornstein") appeal the district court's grant of summary judgment in favor of defendant National Union Fire Insurance Corporation ("National Union") in this case involving claims made under a professional liability insurance policy. For the reasons stated below, we affirm the judgment of the district court in part, reverse it in part, and remand this case for further proceedings.
 Bornstein is a lawyer and accountant who was insured under a professional liability insurance policy issued by National Union. From 1975 to 1980, Bornstein prepared and signed the tax returns of his client, Omni Investment Corporation. In May 1980, agents of the Internal Revenue Service served subpoenas upon Omni and Bornstein requesting production of Omni's corporate records. Shortly after this, the United States Department of Justice became involved in the case, and a grand jury in Baltimore, Maryland, began investigating Omni and Bornstein.
 
 
 1
 Omni and Bornstein retained counsel to represent them in the investigation, and Omni agreed to pay the cost of Bornstein's legal representation. In May 1983, the Assistant United States Attorney for the District of Maryland informed Bornstein that he had become a target of the grand jury's investigation. In October 1983, Bornstein was informed that the Internal Revenue Service had recommended that he be prosecuted. At about the same time, Omni notified Bornstein that it would no longer pay any of his legal fees.
 
 
 2
 Bornstein gave oral notice of his prospective prosecution to National Union in mid-October 1983. At that time, Bornstein requested that National Union undertake his defense, pursuant to a provision of his professional liability insurance policy which stated that National Union would "defend any proceeding or suit brought by any government regulatory agency seeking nonpecuniary relief." Bornstein gave National Union written notice of his claim on November 18, 1983.
 
 
 3
 National Union never provided Bornstein with the defense to which he claimed he was entitled under the insurance policy. Bornstein was indicted by the grand jury for tax law violations on March 13, 1984, and he was arraigned on April 7, 1984. The indictment against Bornstein was dismissed on May 15, 1986.
 
 
 4
 Bornstein filed suit against National Union in the United States District Court for the Eastern District of Virginia. Of the five counts alleged in his amended complaint, only three are relevant to this appeal. In Count I, Bornstein sought a declaration that National Union was required to provide him a defense in the proceedings that had been brought against him. Bornstein also sought reimbursement of the legal fees he had incurred in defending himself.[1] 1] Count III requested an award of compensatory and punitive damages for intentional infliction of emotional distress arising from National Union's refusal to defend Bornstein. Count IV sought an award of attorney's fees and costs pursuant to Va.Code Sec. 38.2-209 (1986) for National Union's bad-faith refusal to provide Bornstein a defense.
 
 
 5
 National Union moved for summary judgment on all counts of the complaint, and Bornstein moved for partial summary judgment on his claim that the insurance policy required National Union to defend him. The district court granted summary judgment for National Union on all claims. Bornstein appeals, seeking reversal of the summary judgment for National Union on Counts I, III and IV, and judgment in his favor on the issue of coverage under Count I.
 
 
 6
 The primary question in this case is whether National Union was required to provide Bornstein a defense pursuant to the policy provision which required it to "defend any proceeding or suit brought by any government regulatory agency seeking nonpecuniary relief." The answer to this question depends upon whether the grand jury investigation and the proceedings following Bornstein's indictment constituted a proceeding brought by a government regulatory agency seeking nonpecuniary relief within the meaning of the insurance policy issued by National Union.
 
 
 7
 The insurance policy at issue in this case contains no definition of the key term "proceeding brought by a government regulatory agency seeking nonpecuniary relief." Naturally, the parties take different views concerning the proper construction of the relevant language. National Union contends that none of the proceedings brought against Bornstein constituted proceedings for which National Union was obliged to furnish a defense under the terms of the policy. In National Union's view, the grand jury investigation of Bornstein was not within the meaning of the relevant policy language, because the purpose of the investigation was to gather information, not to seek nonpecuniary relief against Bornstein. National Union also argues that the post-indictment proceedings against Bornstein do not come within the pertinent policy provision, because these proceedings were brought by the grand jury that returned the indictment. According to National Union, a grand jury cannot be viewed as a government regulatory agency within the meaning of the policy language.
 
 
 8
 Bornstein contends that all of the proceedings that were brought against him, both before and after his indictment, were proceedings brought by a government regulatory agency seeking nonpecuniary relief. In Bornstein's view, both the grand jury's investigation and its post-indictment proceedings constituted proceedings seeking nonpecuniary relief, in that they were instituted for the purpose of imposing criminal liability and criminal sanctions against him. Bornstein also argues that all of the proceedings against him were brought by government regulatory agencies within the meaning of the relevant policy language. As Bornstein points out, the investigation of his alleged tax law violations was instituted and directed by the Internal Revenue Service and the Department of Justice, both of which are government agencies. Bornstein also claims that these agencies continued to control the course of the postindictment proceedings, thus making those proceedings the proceedings of government regulatory agencies as well.
 
 
 9
 In our view, both parties have offered reasonable, though conflicting, constructions of the relevant policy language. Under Virginia law, which applies in this case, we must resolve the ambiguity in the policy language in favor of Bornstein, the insured.
 
 
 10
 As we have recognized, the courts of Virginia consistently apply two rules in construing the language of insurance policies. "First, where language in an insurance policy is susceptible of two constructions, it is to be construed liberally in favor of the insured and strictly against the insurer.... Second, where two interpretations equally fair may be made, the one which permits a greater indemnity will prevail." Jefferson-Pilot Fire & Casualty Co. v. Boothe, Prichard & Dudley, 638 F.2d 670, 674 (4th Cir.1980) (citing Fidelity & Casualty Co. v. Fratarcangelo, 201 Va. 672, 112 S.E.2d 892 (1960); Ayers v. Harleysville Mutual Casualty Co., 172 Va. 383, 2 S.E.2d 303 (1939)). "Where an insurance policy is susceptible of two constructions, one of which would effectuate coverage and the other not, it is the court's duty to adopt that construction which will effectuate coverage." Mollenauer v. Nationwide Mutual Insurance Co., 214 Va. 131, 198 S.E.2d 591, 592 (1973) (per curiam). Accord White v. Blue Cross, 215 Va. 601, 212 S.E.2d 64, 65 (1975) (per curiam).
 
 
 11
 In our opinion, the policy language at issue in this case is susceptible both of the construction offered by National Union and of the construction offered by Bornstein. Because the policy language fairly can be interpreted either way, we are bound, under Virginia law, to adopt the construction that will afford coverage to Bornstein. Accordingly, we hold that the grand jury investigation and the post-indictment proceedings brought against Bornstein were proceedings brought by government regulatory agencies seeking nonpecuniary relief within the meaning of the relevant policy provision. Consequently, National Union was obligated to defend Bornstein in connection with these proceedings after Bornstein furnished written notice of his claim to National Union on November 18, 1983.
 
 
 12
 Bornstein's remaining claims need not detain us long. In addition to a determination that National Union was obligated to defend him in connection with his investigation and indictment for alleged tax law violations, Bornstein seeks reversal of the district court's grant of summary judgment in favor of National Union on Counts III and IV of the amended complaint. As previously noted, Count III alleged a claim for intentional infliction of emotional distress resulting from National Union's refusal to provide Bornstein a defense. Count IV sought an award of attorney's fees and costs under Va.Code Sec. 38.2-209 (1986).
 
 
 13
 Under Virginia law, a plaintiff seeking recovery for intentional infliction of emotional distress "must establish that the tort-feasor's conduct is outrageous and intolerable, the wrongful conduct and the emotional distress are causally connected and the emotional distress is severe." Raftery v. Scott, 756 F.2d 335, 339 n. 4 (4th Cir.1985) (construing Womack v. Eldridge, 215 Va. 338, 210 S.E.2d 145 (1974)). In order to recover attorney's fees and costs under Va.Code Sec. 38.2-209, a plaintiff must establish that the insurer acted in bad faith by denying coverage or refusing to make payment under the policy.
 
 
 14
 We think that the district court acted properly in granting summary judgment for National Union on Bornstein's claims for intentional infliction of emotional distress and for an award of costs and fees under Va.Code Sec. 38.2-209. National Union's refusal to defend Bornstein simply cannot be characterized as outrageous or intolerable conduct, or as conduct undertaken in bad faith. As previously discussed, National Union's construction of the insurance policy to deny coverage to Bornstein was a reasonable interpretation. We agree with the district court that National Union should not be subjected to tort liability or to liability for Bornstein's costs and fees simply because it refused to defend Bornstein in reliance on its reasonable interpretation of the insurance policy.
 
 
 15
 We affirm the district court's grant of summary judgment in favor of National Union on Counts III and IV of the amended complaint. We reverse the grant of summary judgment in favor of National Union on Count I and remand this case for further proceedings. On remand, the district court is directed to enter judgment for Bornstein on the issue of coverage under Count I and to undertake such further proceedings as may be necessary to a determination of damages.
 
 
 16
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 At oral argument, Bornstein's counsel informed us that Bornstein seeks to recover only the legal fees he incurred after giving oral notice of his claim to National Union in October 1983. Although we conclude that Bornstein is entitled to recover his legal fees from National Union, we believe that Bornstein should recover only the fees he incurred after giving written notice of his claim to National Union on November 18, 1983. The insurance policy under which Bornstein seeks to recover provides that "[u]pon the insured's becoming aware of any act, error or omission which could reasonably be expected to be the basis of a claim or suit covered hereby, written notice shall be given by or on behalf of the insured to the Company ... as soon as practicable...." Under the terms of the policy, National Union was obligated to pay claims "reported to the Company." The policy provides that "[a] claim shall be considered to be reported to the Company when the Company ... first receives written notice of the claim...."