**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-1956**

SUNTRUST MORTGAGE, INC.,

Plaintiff – Appellee,

v.

UNITED GUARANTY RESIDENTIAL INSURANCE COMPANY OF NORTH CAROLINA,

Defendant – Appellant,

and

AIG UNITED GUARANTY CORPORATION, a/k/a United Guaranty Corporation; JOHN DOES 1-10,

Defendants.

**No. 11-2086**

SUNTRUST MORTGAGE, INC.,

Plaintiff – Appellee,

v.

UNITED GUARANTY RESIDENTIAL INSURANCE COMPANY OF NORTH CAROLINA,

Defendant – Appellant,

and

AIG UNITED GUARANTY CORPORATION, a/k/a United Guaranty Corporation; JOHN DOES 1-10,

            Defendants.

_____

Appeals from the United States District Court for the Eastern District of Virginia, at Richmond. Robert E. Payne, Senior District Judge. (3:09-cv-00529-REP)

_____

Argued: October 24, 2012              Decided: February 1, 2013

_____

Before WYNN and THACKER, Circuit Judges, and James K. BREDAR, United States District Judge for the District of Maryland, sitting by designation.

_____

Affirmed in part and vacated in part by unpublished opinion. Judge Wynn wrote the opinion, in which Judge Thacker joined. Judge Bredar wrote a separate opinion concurring in part and dissenting in part.

_____

**ARGUED:** Theodore B. Olson, GIBSON, DUNN & CRUTCHER, LLP, Washington, D.C., for Appellant. Raymond A. Cardozo, REED SMITH LLP, San Francisco, California, for Appellee. **ON BRIEF:** William E. Wegner, Christopher Dusseault, Matthew A. Hoffman, Melissa Case, GIBSON, DUNN & CRUTCHER, LLP, Los Angeles, California; Thomas H. Dupree, Jr., Erik R. Zimmerman, GIBSON, DUNN & CRUTCHER, LLP, Washington, D.C.; Wyatt B. Durrette, Jr., J. Buckley Warden IV, DURRETTECRUMP PLC, Richmond, Virginia, for Appellant. S. Miles Dumville, Curtis G. Manchester, REED SMITH LLP, Richmond, Virginia; Tillman J. Breckenridge, REED SMITH LLP, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

In this insurance contract case, Defendant United Guaranty Residential Insurance Company of North Carolina ("United Guaranty") argues that the district court erred in granting summary judgment in favor of Plaintiff SunTrust Mortgage, Inc. ("SunTrust Mortgage") on its breach of contract claim, denying United Guaranty's counterclaim based on SunTrust Mortgage's first material breach defense, awarding damages to SunTrust Mortgage, and making certain sanctions and evidentiary rulings. For the reasons discussed below, we affirm the district court's breach of contract and sanctions and evidentiary rulings and vacate as to the district court's first material breach determination.

I.

SunTrust Mortgage makes mortgage loans on real property. At the heart of this dispute are "IOF Combo 100 Loans," certain second lien loans with an interest-only option.

In 1998, SunTrust Mortgage and United Guaranty entered into an insurance contract, the "Master Policy," insuring SunTrust Mortgage against payment defaults on certain loan products. It is undisputed that United Guaranty authored the Master Policy.

Master Policy Section 4, titled "Exclusions from Coverage," states that United Guaranty "shall not be liable for, and this

3

Policy shall not apply to" certain listed exclusions. J.A. 237. One such exclusion, in Section 4.14, is "Failure to Conform to Reporting Program Guidelines." J.A. 238. It provides that "[a]ny Claim [is excluded from coverage] if the Loan did not meet the Reporting Program Guidelines . . . ." Id. The term "Reporting Program Guidelines" is defined in Section 1.36 as "the guidelines designated as such in the Reporting Program Manual." J.A. 232. The term "Reporting Program Manual," as defined in Section 1.37, "means the document designated as such by [United Guaranty] in effect as of the date of this [Master Policy], as it may be amended and restated by [United Guaranty] from time to time, which contains the Reporting Program Guidelines and which sets forth the terms and conditions under which the Insured is to report or apply for coverage under this Policy." Id. When the Master Policy was executed in 1998, there existed a document titled "Reporting Program Manual." That document did not, however, provide underwriting guidelines for the loans at issue here, which were developed after the Master Policy had been executed.

In June 2004 and October 2005, the parties executed amendments to the Master Policy. Those amendments, the "Flow Plans," specified, among other things, guidelines that SunTrust Mortgage was to use in underwriting its loans. United Guaranty drafted nearly all the provisions in the Flow Plans, including,

4

crucially, an "Underwriting Guidelines" provision stating that "loans will conform to SunTrust Mortgage guidelines that are currently being used and have been mutually agreed upon." J.A. 252. That provision, identical in both the 2004 and 2005 Flow Plans, makes no reference to e-mail correspondence, a Guideline Matrix, or any other documents beyond the "SunTrust Mortgage guidelines that are currently being used and have been mutually agreed upon." Id.

In 2005, United Guaranty created a spreadsheet containing, in summary form, information about the insured loans. That document, called the "Guideline Matrix," stated, under the heading for the IOF Combo 100 Loans at issue here, "Yes, if DU approved." J.A. 634. The abbreviation "DU" stands for "Desktop Underwriter," an automated underwriting method. According to United Guaranty, the Guideline Matrix memorialized the "SunTrust Mortgage guidelines that are currently being used and have been mutually agreed upon." J.A. 252.

By contrast, SunTrust Mortgage contends that the "SunTrust Mortgage guidelines that are currently being used and have been mutually agreed upon" for the loans at issue were those set forth in an over-100-page document created by SunTrust Mortgage. That document indicated, among other things, that IOF Combo 100 Loans "MUST be traditionally underwritten[.]" J.A. 966, 1067.

5

In 2007, United Guaranty began denying SunTrust Mortgage claims on IOF Combo 100 Loans that had been underwritten without using Desktop Underwriter. Also in 2007, United Guaranty informed SunTrust Mortgage that certain IOF Combo 100 Loans that had not been underwritten through Desktop Underwriter were "ineligible for continued coverage . . . ." J.A. 674.

SunTrust Mortgage, in turn, claimed that United Guaranty denied and rescinded coverage without a legitimate basis in the Master Policy or Flow Plans. Accordingly, in 2009, SunTrust Mortgage filed this action against United Guaranty. United Guaranty counterclaimed.

Thereafter, United Guaranty discovered that an e-mail cited in SunTrust Mortgage's first amended complaint differed in substance from a version of the same e-mail in United Guaranty's possession. After a forensic examination showed that the cited e-mail had been altered, United Guaranty moved for emergency relief, and the district court ordered additional discovery into the matter. The district court also permitted SunTrust Mortgage to file a second amended complaint omitting the reference to the suspect e-mail.

In May 2010, after the district court dismissed its fraud claims in its second amended complaint, SunTrust Mortgage filed its third amended complaint—the operative complaint for purposes of this appeal—alleging two causes of action for breach of

6

contract. United Guaranty counterclaimed, seeking declaratory judgments regarding the loans at issue and SunTrust Mortgage's obligation to continue making premium payments.

In August 2010, United Guaranty moved for sanctions against SunTrust Mortgage relating to the adulterated e-mail scheme. The district court held a three-day evidentiary hearing on the sanctions motion and found that SunTrust Mortgage's former employee Mary Pettitt deliberately altered e-mails to manufacture documentary support for her view that the Guideline Matrix was an internal United Guaranty tracking document not binding on SunTrust Mortgage. The district court ordered SunTrust Mortgage to pay United Guaranty's fees and costs associated with the sanctions motion. Notwithstanding its ruling regarding the e-mail adulteration, the district court excluded evidence regarding the SunTrust Mortgage e-mail fraud, as well as parol evidence regarding the Guideline Matrix.

Thereafter, the district court granted summary judgment in SunTrust Mortgage's favor on its first breach of contract claim. As for United Guaranty's declaratory judgment counterclaims, the district court initially granted, but then revoked, summary judgment in United Guaranty's favor. To determine whether United Guaranty's failure to pay claims under the Master Policy constituted a first material breach excusing SunTrust Mortgage from paying premiums going forward, the district court conducted

7

a bench trial. The district court then ruled in SunTrust Mortgage's favor, concluding, among other things, that United Guaranty's breach of contract and breach of the implied covenant of good faith and fair dealing—for collecting premiums on loans it disputed were covered—constituted, in combination, a first material breach entitling SunTrust Mortgage to cease premium payments under the policy.

Finally, the district court held a bench trial on damages, after which it awarded SunTrust Mortgage over forty million dollars. With this appeal, United Guaranty challenges the district court's various rulings.

## II.

With its first argument, United Guaranty contends that the district court erred in granting SunTrust Mortgage summary judgment on its breach of contract claim. Specifically, United Guaranty argues that the district court erred in excluding the Guideline Matrix and related evidence as parol evidence and that a reasonable jury, with that evidence before it, could determine that the Guideline Matrix established the terms of coverage. We review the district court's summary judgment decision de novo. In re Peanut Crop Ins. Litig., 524 F.3d 458, 470 (4th Cir. 2008). Upon doing so, we conclude that the district court did

not err, and that SunTrust Mortgage was entitled to summary judgment.

This contract dispute is before us on diversity jurisdiction; undisputedly, Virginia law applies. The parol evidence rule, at the heart of United Guaranty's argument, "has nowhere been more strictly adhered to in its integrity than in Virginia." Erlich v. Hendrick Const. Co., Inc., 217 Va. 108, 112, 225 S.E.2d 665, 668 (1976) (quotation marks omitted).[1] Under Virginia law, the rule provides that "where an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." Globe Iron Const. Co. v. First Nat'l Bank of Boston, 205 Va. 841, 848, 140 S.E.2d 629, 633 (1965).

In effect, the rule recognizes that "where parties have reduced their contract to a writing which imposes a legal obligation in clear and explicit terms the writing shall be the sole memorial of that contract . . . ." Pulaski Nat'l Bank v.

---

[1] While called an "evidence" rule, "[t]he view that the parol evidence rule is substantive rather than procedural has received such widespread recognition that it may be said to be universally accepted." 11 Williston on Contracts § 33:4 (4th ed. 2012). Accordingly, because it is a substantive rule, we look to the pertinent state law to resolve United Guaranty's parol evidence challenge. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

9

Harrell, 203 Va. 227, 233, 123 S.E.2d 382, 387 (1962). It therefore logically follows that "when the language in an insurance policy is clear and unambiguous, courts . . . give the language its plain and ordinary meaning and enforce the policy as written." P'ship Umbrella, Inc. v. Fed. Ins. Co., 260 Va. 123, 133, 530 S.E.2d 154, 160 (2000). And thus, "[h]owever inartfully it may have been drawn, the court cannot make a new contract for the parties, but must construe its language as written." Berry v. Klinger, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983).

Further, Virginia law dictates that ambiguities in insurance contracts be construed against insurers and in favor of insureds and coverage. Indeed,

> [a]s we have recognized, the courts of Virginia consistently apply two rules in construing the language of insurance policies. "First, where language in an insurance policy is susceptible of two constructions, it is to be construed liberally in favor of the insured and strictly against the insurer . . . . Second, where two interpretations equally fair may be made, the one which permits a greater indemnity will prevail." Jefferson-Pilot Fire & Casualty Co. v. Boothe, Prichard & Dudley, 638 F.2d 670, 674 (4th Cir. 1980) (citing Fidelity & Casualty Co. v. Fratarcangelo, 201 Va. 672, 112 S.E.2d 892 (1960); Ayers v. Harleysville Mutual Casualty Co., 172 Va. 383, 2 S.E.2d 303 (1939)). "Where an insurance policy is susceptible of two constructions, one of which would effectuate coverage and the other not, it is the court's duty to adopt that construction which will effectuate coverage." Mollenauer v. Nationwide Mutual Insurance Co., 214 Va. 131, 198 S.E.2d 591, 592 (1973) (per curiam). Accord White v. Blue Cross, 215 Va. 601, 212 S.E.2d 64, 65 (1975) (per curiam).

10

Joseph P. Bornstein, Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 828 F.2d 242, 245 (4th Cir. 1987).

The threshold question before us is whether the Master Policy is unambiguous as a matter of law. If yes, it must be enforced as written. SunTrust Mortgage argues that the Flow Plans unambiguously identify the "SunTrust Mortgage guidelines"—and not the Guideline Matrix—as setting forth the applicable underwriting guidelines for the IOF Combo 100 loans. By contrast, United Guaranty argues that under the Master Policy and Flow Plans, the Guideline Matrix and related e-mail communications establish the applicable underwriting guidelines.

The parties executed the Flow Plans after the Master Policy. The Flow Plans thus represent the parties' final expression of their intent. The Flow Plans clearly delineate that "SunTrust Mortgage guidelines" set forth the governing underwriting guidelines for the IOF Combo 100 loans. We agree with SunTrust Mortgage that the Flow Plans simply do not reflect an understanding that United Guaranty guidelines provide the operative underwriting requirements. Instead, the Flow Plans plainly state that SunTrust Mortgage's guidelines govern, and those guidelines do not mandate the use of Desktop Underwriter for coverage.

11

United Guaranty nevertheless contends that the phrase "SunTust Mortgage guidelines" refers not to a SunTrust Mortgage document but instead to United Guaranty's guidelines that it used specifically for SunTrust Mortgage, as opposed to guidelines that United Guaranty used for its other policyholders. Although the parties reasonably could have been expected to designate underwriting guidelines furnished by the insurer, the Flow Plans' language reflects no such understanding.

As the district court noted, the Master Policy, prior to its amendment by the Flow Plans, originally indicated that "the Reporting Program Manual, and, by extension, the Reporting Program Guidelines housed therein, is a U[nited] G[uaranty] document—a document designated by U[nited] G[uaranty, and U[nited] G[uaranty] alone, that sets forth underwriting guidelines that [SunTrust Mortgage] is to follow." J.A. 1080. But the Flow Plans amended the Master Policy. And the Flow Plans make plain that SunTrust Mortgage guidelines, and not United Guaranty guidelines, control.

Moreover, even if we believed there to exist a conflict between the Master Policy and the Master Policy as amended by the Flow Plans, we would be obligated, under Virginia law, to read any resulting ambiguity in favor of the insured, i.e., SunTrust Mortgage, and coverage. See, e.g., Jefferson-Pilot

12

Fire & Cas., 638 F.2d at 674 ("[W]here language in an insurance policy is susceptible of two constructions, it is to be construed liberally in favor of the insured and strictly against the insurer."); Joseph P. Bornstein, Ltd., 828 F.2d at 245 ("Where an insurance policy is susceptible of two constructions, one of which would effectuate coverage and the other not, it is the court's duty to adopt that construction which will effectuate coverage." (quotation marks omitted)). We therefore would read the Master Policy and Flow Plans in SunTrust Mortgage's favor.

United Guaranty nevertheless urges us to consider evidence outside the four corners of the Master Policy, arguing that it is not a fully integrated contract. United Guaranty contends that outside evidence is necessary to understand the partially integrated policy's terms.

Under Virginia law, the partial integration doctrine "allows parties to a contract to supplement the terms of the writing with extrinsic evidence only if: (1) the parties did not reduce their entire agreement to writing; (2) the extrinsic evidence does not contradict or vary the written terms; and (3) the extrinsic evidence involves items on which the parties agreed contemporaneously with the writing." Swengler v. ITT Corp. Electro-Optical Prods. Div., 993 F.2d 1063, 1069 (4th Cir.

13

1993) (emphasis added).  On the facts before us, United Guaranty simply cannot jump those hurdles.

At a minimum, we cannot agree that the Master Policy leaves unspecified the governing underwriting guidelines.  To the contrary, the Flow Plans, which amended the Master Policy, made quite clear that the SunTrust Mortgage guidelines then in place, and to which the parties had mutually agreed, controlled the underwriting requirements.  It is undisputed that SunTrust Mortgage had its own guidelines in place, and those guidelines indicated that the loans "MUST be traditionally underwritten[.]" J.A. 966, 1067.  At least as to the underwriting guidelines, therefore, the parties had indeed reduced them to writing.  And because United Guaranty cannot satisfy even the first of the three elements necessary to admit evidence under the partial integration doctrine, United Guaranty's argument fails.

United Guaranty also suggests that the public policy behind Virginia's rule of reading ambiguities in insurance contracts against insurers and in favor of insureds makes little sense in the commercial context.  Yet United Guaranty cites not a single Virginia case stating as much.  And this Court has repeatedly applied the rule in commercial cases.  See, e.g., Highway Exp. Inc. v. Fed. Ins. Co., 19 F.3d 1429 (4th Cir. 1994) (unpublished table case applying rule in commercial insurance context); Joseph P. Bornstein, Ltd., 828 F.2d 242 (applying rule to

commercial insurance case); Jefferson-Pilot Fire & Cas., 638 F.2d 670 (same). United Guaranty provides us with no support for changing course here.

United Guaranty further argues that summary judgment was inappropriate based on a single footnote in a thirty-year-old case, Gen. Accident Fire & Life Assurance Corp., Ltd. v. Akzona, Inc., 622 F.2d 90, 93 n.5 (4th Cir. 1980). In Akzona, this Court determined that the insurance policy at issue was ambiguous and stated, in the pertinent footnote, that summary judgment was inappropriate due to material factual disputes. Notably, one such dispute preventing summary judgment was the authorship of the policy at issue. Id.

By contrast, here, no material factual disputes hindered the district court at summary judgment, and the Master Policy's and Flow Plans' authorship was clear—United Guaranty drafted them. "[S]tate and federal courts in Virginia have often resolved any ambiguity by strictly construing or interpreting the unclear provisions against the party who drafted the agreement. . . . This cannon of construction is especially true in the context of insurance policies." John V. Little, Contract Law in Virginia, Vol. 1 at 90-91 (Virginia CLE Pubs. 2011) (citing, e.g., Gov't Employees Ins. Co. v. Moore, 266 Va. 155, 165, 580 S.E.2d 823, 828 (2003) (observing that Virginia courts have consistently construed policies against insurers because

15

they "'are contracts whose language is ordinarily selected by insurers rather than policyholders'")). United Guaranty's reliance on Akzona is therefore misplaced.

Finally, even assuming for the sake of argument that, somehow, the Guideline Matrix and related evidence could be considered, they would be of little help to United Guaranty's cause. The Guideline Matrix states for "Eligible 1st Mortgage Programs" that are "Interest Only" "Yes, if DU approved." J.A. 634. Nothing is defined or explained in the minimalist matrix. And the e-mails that United Guaranty sought to put before a jury indicate that the Guideline Matrix was, for example, "operational" (J.A. 835) and contained "grids of what [United Guaranty] will insure" (J.A. 838). They further indicate that United Guaranty sought to "confirm that data we have here" were "accura[te]." Id. Reading the terse Guideline Matrix provision and pertinent e-mails in favor of the insured and coverage, as we must, we cannot conclude that they unambiguously demonstrate the parties' intent that the Guideline Matrix, and not the SunTrust Mortgage guidelines, govern—and only under that circumstance would the Master Policy as amended by the Flow Plans be read in United Guaranty's favor.

In sum, it may be that United Guaranty intended that the Guideline Matrix set forth the requirements for coverage. But United Guaranty, which undisputedly authored the operative

16

provisions, did not draft the Master Policy as amended by the Flow Plans to clearly reflect that. Under Virginia law, United Guaranty is stuck with the provisions it drafted, and summary judgment for SunTrust Mortgage on its breach of contract claim was proper.

## III.

United Guaranty next argues that the district court erred in granting judgment in favor of SunTrust Mortgage on United Guaranty's declaratory judgment counterclaim regarding SunTrust Mortgage's obligation to pay renewal premiums. We review a judgment following a bench trial, such as this one, under a mixed standard of review: Factual findings may be reversed only for clear error, while conclusions of law are examined de novo. Roanoke Cement Co., L.L.C. v. Falk Corp., 413 F.3d 431, 433 (4th Cir. 2005).

Here, the district court convened a bench trial to determine whether United Guaranty had committed a first material breach and whether SunTrust Mortgage was entitled to attorney's fees under Virginia Code § 38.2-209(A). Section 38.2-209(A) allows for attorney's fees but states that "attorney's fees shall not be awarded unless the court determines that the insurer, not acting in good faith, has either denied coverage or failed or refused to make payment to the insured under the

17

policy." Id. The parties settled the fee issue before trial. Indeed, SunTrust Mortgage's counsel represented in open court that settling the fee issue would allow United Guaranty to "escape the possibility of a finding of bad faith," saving it "a huge amount of money and the possibility of stigma." J.A. 1127. The bench trial was, therefore, solely about the first material breach issue.

SunTrust Mortgage raised, in its answer to the counterclaim and elsewhere, its "first material breach" affirmative defense. But it did not raise, as an affirmative defense or otherwise, a breach of the implied covenant of good faith and fair dealing. Notably, the district court pointed out that SunTrust Mortgage "did not employ the precise phrase 'breach of an implied covenant of good faith and fair dealing'" in its briefing either before or after the bench trial on the counterclaim until prompted to do so by court order. J.A. 1418, 1488. And SunTrust Mortgage conceded that it "did not use the words 'implied duty of good faith'" in its brief setting forth the basis for its first material breach defense. Appellee's Br. at 53.

The district court declared that United Guaranty had, nevertheless, "not shown that it was prejudiced by [SunTrust Mortgage's] arguing after trial, for the first time explicitly, that [United Guaranty] breached an implied covenant of good

18

faith and fair dealing in continuing to collect premiums on performing IOF Combo 100 Loans." J.A. 1489. The district court determined that United Guaranty breached its implied covenant of good faith and fair dealing vis-à-vis SunTrust Mortgage by collecting premiums under the Master Policy without intending to pay claims. The district court relied on its good faith and fair dealing determination to hold that the cumulative effect of United Guaranty's breaches constituted a material breach of the policy. Specifically, the district court stated that United Guaranty's "breaches, considered in combination, constituted a material breach of the insurance policy." J.A. 1515.

It is axiomatic that a "party must affirmatively state any avoidance or affirmative defense . . . ." Fed. R. Civ. P. 8. Further, "it is a frequently stated proposition of virtually universal acceptance by the federal courts that a failure to plead an affirmative defense as required by Federal Rule 8(c) results in the waiver of that defense and its exclusion from the case . . . ." 5 Fed. Prac. & Proc. Civ. § 1278 (3d ed. 2012). See also, e.g., S. Wallace Edwards & Sons, Inc. v. Cincinnati Ins. Co., 353 F.3d 367 (4th Cir. 2003) (holding insurer waived affirmative defense of insurance policy's two-year limitations period for filing suit by failing to raise issue until summary judgment stage and noting that the delayed assertion of the defense prejudiced the opposing party); Sales v. Grant, 224 F.3d

19

293, 296 (4th Cir. 2000) (holding that this Court had "no trouble" deeming affirmative defense waived because "mention of qualified immunity in [the defendants'] answers consisted of only a single, cursory sentence on the matter, contained in a listing of several affirmative defenses: 'The individual defendants are protected by qualified immunity from suit'" and because defendants failed to pursue affirmative defense in motions and at trial).

The district court deemed good faith and fair dealing an affirmative defense. J.A. 1504 (discussing the "affirmative defense brought by the insured in its capacity as a defendant that, by failing to perform the policy consonant with the duty of good faith and fair dealing, the insurer has materially breached the policy and therefore may not pursue its own claim (in this instance for declaratory relief) under the policy"). Even SunTrust Mortgage conceded at oral argument that good faith and fair dealing is an affirmative defense. And, "[a]ffirmative defenses that raise new facts and arguments, which [], if proven, would defeat the plaintiff's claim and thus are true affirmative defenses[,] include mitigation of damages, failure of plaintiff to fulfill conditions precedent, breach of covenant of good faith and fair dealing, and waiver." Def. Against a Prima Facie Case § 2:1 (rev. ed. 2012) (emphasis added).

Nevertheless, the district court made plain that the implied covenant of good faith and fair dealing was not raised until after trial—long after an affirmative defense must be raised. SunTrust Mortgage has therefore waived the good faith and fair dealing issue, and the district court erred in considering it. Further, "[t]he prejudice to United Guaranty—deciding a $92 million claim based on a theory that was raised for the first time by the court months after trial—is obvious." Appellant's Br. at 49. United Guaranty states, for example, that it would have called numerous additional witnesses at trial and adduced substantial additional testimony in its favor, had it known that good faith and fair dealing was at issue. The district court itself acknowledged as much when, in discussions regarding the settlement of the bad faith attorney's fees issue, the district court noted that "removing the bad faith portion of the two-step trial" would "eliminate a lot of witnesses . . . ." J.A. 1169-70.

Not only did SunTrust fail, as a matter of fact, to put United Guaranty on notice that an alleged breach of the implied covenant of good faith and fair dealing was at issue—even Virginia state law would not have put United Guaranty on notice. The district court held that "the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing" is a factor in

21

deciding the first material breach issue. J.A. 1515. The district court cited not a single Virginia state case for that proposition. Instead, its sole support was a district court opinion, RW Power Partners, L.P. v. Va. Elec. & Power Co., 899 F. Supp. 1490 (E.D. Va. 1995). In RW Power Partners, the district court cited the Restatement (Second) of Contracts § 241, which lists five factors "useful in identifying the materiality of a breach . . . ." Id. at 1496. The last of those five factors is good faith and fair dealing.

The district court here conceded that "the Supreme Court of Virginia has not formally adopted Section 241 of the Restatement" with its multi-factor test. J.A. 1514 n.63. Nevertheless, the district court asserted that the Virginia Supreme Court "has cited its commentary in expounding on the type of evidence required to establish material breach," J.A. 1514-15, citing to Horton v. Horton, 254 Va. 111, 116, 487 S.E.2d 200, 204 (1997). But the Virginia Supreme Court in Horton cited the Restatement merely for the proposition that the "evidence required to establish a material breach of contract will vary depending on the facts surrounding a particular contract." Horton, 254 Va. at 116, 487 S.E.2d at 204. Nowhere in Horton did the Virginia Supreme Court even mention the implied covenant of good faith and fair, much less hold that it should be considered as a factor in a first material breach

22

analysis. And we have found no other Virginia Supreme Court cases so holding. In other words, even the undisputedly applicable substantive law would not have suggested to United Guaranty that an implied covenant of good faith and fair dealing claim inhered in SunTrust's first material breach defense.

In sum, the record reveals that United Guaranty's alleged breach of the implied covenant of good faith and fair dealing was not raised until after the district court had held its bench trial. By that late date, the prejudice to United Guaranty was "obvious," and SunTrust Mortgage had waived the issue. We therefore vacate the district court's judgment in favor of SunTrust Mortgage as to first material breach, which relied on the good faith and fair dealing determination.

IV.

United Guaranty next contends that "[i]f SunTrust [Mortgage] is excused from paying $92 million in premiums because United Guaranty committed a first material breach, that amount must be deducted from SunTrust [Mortgage]'s damages . . . ." Appellant's Br. at 63. Because we vacate the district court's judgment on the first material breach issue, the district court's damages award does not need to reflect any premium savings, as they no longer exist. United Guaranty's argument is, therefore, moot.

23

V.

Finally, United Guaranty argues that the district court abused its discretion by declining to impose harsher sanctions for SunTrust Mortgage's misconduct relating to the fraudulent e-mail alterations. The district court ordered SunTrust Mortgage to pay United Guaranty's attorney's fees and expenses incurred in connection with United Guaranty's motion for sanctions, but rejected United Guaranty's motion to dismiss SunTrust Mortgage's complaint altogether. This Court reviews the appropriateness of sanctions imposed by a district court for an abuse of discretion. United States v. Shaffer Equip. Co., 11 F.3d 450, 462 (4th Cir. 1993).

A district court's authority to dismiss a case based on a party's misconduct derives from the court's "inherent power." Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991). "Because the inherent power is not regulated by Congress or the people and is particularly subject to abuse, it must be exercised with the greatest restraint and caution, and then only to the extent necessary." Shaffer, 11 F.3d at 461.

The Supreme Court has called dismissal "a particularly severe sanction," yet one that falls within the court's discretion. Chambers, 501 U.S. at 45. This Court has recognized that dismissal may be warranted "when a party deceives a court or abuses the process at a level that is

24

utterly inconsistent with the orderly administration of justice or undermines the integrity of the process." Shaffer, 11 F.3d at 462. In Shaffer, we identified six factors for courts to consider in determining whether dismissal is appropriate:

> (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest.

Id. at 462-63. Further, we directed courts to give particular consideration to the broader policy of deciding cases on the merits. Id. at 463.

When a party's sanctionable conduct is spoliation of evidence, to justify dismissal, the district court must "conclude either (1) that the spoliator's conduct was so egregious as to amount to a forfeiture of his claim, or (2) that the effect of the spoliator's conduct was so prejudicial that it substantially denied the defendant the ability to defend the claim." Silvestri v. Gen. Motors Corp., 271 F.3d 583, 593 (4th Cir. 2001).

Here, the district court concluded that Pettitt's spoliation of evidence constituted a fraud on the court for which SunTrust Mortgage could be held responsible. The court also held that SunTrust Mortgage's management and in-house

25

counsel abused the judicial process by encouraging the use of one of Pettitt's altered e-mails in SunTrust Mortgage's litigation efforts against United Guaranty.[2] The court then weighed the Shaffer factors to determine the appropriate sanction. Though the court found that some of the factors weighed in favor of granting dismissal, after thorough consideration of all factors as well as the broader policies articulated in Shaffer, the district court decided in favor of a less severe sanction.

For at least two reasons, we are persuaded that the district court did not abuse its discretion in rejecting United Guaranty's request for dismissal. First, despite its assertion to the contrary, United Guaranty was not significantly prejudiced beyond the attorney's fees and additional expenses it incurred in litigating its sanctions motion. While the district court found that Pettitt spoliated evidence, the original, unaltered e-mails eventually came to light and were before the court for its merits determinations. United Guaranty was, therefore, not "substantially denied the ability to defend the claim." Silvestri, 271 F.3d at 593.

---

[2] SunTrust Mortgage's first amended complaint referenced a February 22, 2008 e-mail that Pettitt had altered.

Second, the integrity of the judicial process was not so greatly frustrated as to warrant the "particularly severe sanction" of dismissal. <u>Chambers</u>, 501 U.S. at 45. SunTrust Mortgage's misconduct was certainly egregious and burdened an already stretched court with several months of needless litigation. However, because the unaltered e-mails were preserved, the negative effects of SunTrust Mortgage's bad behavior on the judicial process were only temporary. Moreover, because we affirm the district court's summary judgment ruling in favor of SunTrust Mortgage, including the district court's determination that parol evidence was inadmissible in this case, the evidence affected by SunTrust Mortgage's misconduct has no bearing on the outcome of SunTrust Mortgage's breach of contract claim.[3]

In the alternative, United Guaranty argues that the district court should have given an adverse-inference jury instruction with respect to SunTrust Mortgage's misconduct. Specifically, United Guaranty contends that "[t]he jury should be instructed to presume that Pettitt's testimony would have been favorable to United Guaranty, and to interpret SunTrust

---

[3] The parol evidence included both Pettitt e-mails and any testimony Pettitt would have provided with respect to the Guideline Matrix, had she not invoked the Fifth Amendment and refused to testify.

[Mortgage]'s misconduct as indicative of the weakness of SunTrust [Mortgage]'s case." Appellant's Br. at 73. However, after the district court denied United Guaranty's requested jury instruction, it granted SunTrust Mortgage's motion for summary judgment. Because we affirm the district court's decision to grant summary judgment, SunTrust Mortgage's breach of contract claim will not be put to a jury. Therefore, any alleged error regarding a refused jury instruction is moot.

Lastly, United Guaranty contends that the district court should not have granted SunTrust Mortgage's motion to exclude evidence of the Pettit alterations from consideration by the jury under Federal Rule of Evidence 403(b). Again, because the breach of contract claim will not reach a jury, any alleged error stemming from the district court's Rule 403(b) ruling is moot.

## VI.

For the foregoing reasons, we affirm in part and vacate in part the orders on appeal.

AFFIRMED IN PART AND VACATED IN PART

BREDAR, District Judge, concurring in part and dissenting in part:

I respectfully dissent in part and concur in part with the majority's disposition of this case.

Although both of the parties in the court below argued the language at issue in the 2004 and 2005 Flow Plans was unambiguous, the district court, I believe, incorrectly found as a matter of law that a patent ambiguity existed such that it altered the fundamental balance of power between the parties. The district court focused on three words in the Flow Plans, specifically, "SunTrust Mortgage guidelines," and did not give any weight to the equally important modifying language, "that are currently being used and have been mutually agreed upon." The majority's opinion follows a similar direction. But, as I see it, this modifying language holds the key to proper interpretation of the contract between SunTrust Mortgage and United Guaranty and cannot be disregarded. As the Virginia Supreme Court has said, "no word or clause in a contract will be treated as meaningless if a reasonable meaning can be given to it, and parties are presumed not to have included needless words in the contract." TM Delmarva Power, LLC v. NCP of Virginia, LLC, 557 S.E.2d 199, 200 (Va. 2002).

The language in question is clear and unambiguous. It means what it says, that is, "SunTrust Mortgage guidelines that

are currently being used and have been mutually agreed upon." It is only after the rubber meets the road that we learn the parties believe this language applies to different documents, or different sets of documents. Thus, this is a classic example of a *latent ambiguity*, defined by Virginia courts as a term of an agreement or instrument "'which, *upon application to external objects*, is found to fit *two or more of them equally*.'" Zehler v. E.L. Bruce Co., 160 S.E.2d 786, 789 n.5 (Va. 1968) (citing 9 Wigmore, Evidence § 2472, at 233 (3d ed. 1940)). "A latent ambiguity exists where language 'while appearing perfectly clear at the time the contract[ ] [is] formed, because of subsequently discovered or developed facts, may reasonably be interpreted in either of two ways.'" Virginia Elec. & Power Co. v. Norfolk S. Ry. Co., 683 S.E.2d 517, 526 (Va. 2009) (quoting Galloway Corp. v. S.B. Ballard Constr. Co., 464 S.E.2d 349, 354 (Va. 1995)).

The contested phrase clearly implies a factual predicate, and the predicate set forth in the Master Policy was that underwriting guidelines would originate with United Guaranty. But the district court relied upon a disputed factual allegation by SunTrust Mortgage——that SunTrust Mortgage had devised its own underwriting guidelines and that United Guaranty had agreed to them——to decide that the parties used this language to permit substitution of SunTrust Mortgage's guidelines for United Guaranty's guidelines. Whether United Guaranty had agreed to

30

SunTrust Mortgage's underwriting guidelines was hotly disputed by United Guaranty.

Procedurally, it was incorrect for the district court to rely upon SunTrust Mortgage's extrinsic evidence to resolve this matter upon summary judgment. This was pled as a jury case, and extrinsic evidence as to the meaning of the language in question should only have been considered by the jury to determine which guidelines fit the phrase. Virginia courts for more than two centuries have recognized the propriety of receiving extrinsic evidence to resolve a latent ambiguity. Gatewood v. Burrus, 7 Va. (3 Call.) 194, 1802 WL 650, at *3 (Va. 1802). And resolution of a latent ambiguity by resort to extrinsic evidence is a question of fact for the jury, not for the court. Ewell v. Brock, 91 S.E. 761, 762 (Va. 1917). Alternatively, the Flow Plans reference a collateral agreement, which is clearly a proper subject for admission of extrinsic evidence—again, to be considered by the jury. See J.E. Robert Co. v. J. Robert Co., Inc., of Virginia, 343 S.E.2d 350, 343 (Va. 1986). United Guaranty was entitled to submit extrinsic evidence to the jury and have it determine which document or set of documents fit the language in the Flow Plans.

This Court has previously made it clear that the intention of contracting parties is a question of fact that cannot be resolved on summary judgment and that, "[i]f there is more than

31

one permissible inference as to intent to be drawn from the language employed, the question of the parties' actual intention is a triable issue of fact." Bear Brand Hosiery Co. v. Tights, Inc., 605 F.2d 723, 726 (4th Cir. 1979), cited in Gen. Acc. Fire & Life Assur. Corp., Ltd. v. Akzona, Inc., 622 F.2d 90, 93 (4th Cir. 1980). See also Cram v. Sun Ins. Office, Ltd., 375 F.2d 670, 674 (4th Cir. 1967) ("the intent of the parties to an ambiguous contract is a question of fact which cannot properly be resolved on motions for summary judgment"); Am. Fid. & Cas. Co. v. London & Edinburgh Ins. Co., 354 F.2d 214, 216 (4th Cir. 1965) ("Not merely must the historic facts be free of controversy [in summary judgment proceeding] but also there must be no controversy as to the inferences to be drawn from them."). Because a genuine dispute of material fact existed on SunTrust Mortgage's main claim against United Guaranty, I would rule that summary judgment for SunTrust Mortgage was improper.[*]

---

[*] SunTrust Mortgage has relied in its brief on case law from Virginia that sets forth a presumption of choosing an insured's interpretation over an insurer's interpretation of disputed contractual language. (Appellee's Br. 31.) Such a presumption should logically be employed only if, after employing the traditional tools of contract construction, one is still left with two or more reasonable interpretations. To rely upon the presumption in the first instance, without proper consideration of extrinsic evidence, as this case shows, results in a failure to ascertain the intentions of the contracting parties, and the Virginia Supreme Court has indicated that determining the parties' intent is the whole point of interpreting contracts, (Continued)

32

I would also reverse the evidentiary ruling, barring the admission of United Guaranty's Guideline Matrix and SunTrust Mortgage's altered email messages on the issue of which party's underwriting guidelines governed. The Guideline Matrix should have been submitted to the trier of fact as extrinsic evidence pertaining to the underwriting guidelines. And the email messages were highly relevant evidence that displayed guilty knowledge by SunTrust Mortgage's key employee that SunTrust Mortgage's position was contradicted by the course of dealing between the parties. See, e.g., J.A. 696 (notes from SunTrust Mortgage affirming Mary Pettit's agreement to United Guaranty's terms bound SunTrust Mortgage). This evidence bore directly on the question of how to resolve the latent ambiguity in the contract. Excluding this evidence unfairly tied United Guaranty's hands in defending itself in this lawsuit.

Because I believe summary judgment was improperly granted to SunTrust Mortgage on its claim against United Guaranty, I would also hold that summary judgment was improperly granted to SunTrust Mortgage on United Guaranty's counterclaim for the simple reason that the record is yet incomplete as to whether United Guaranty breached its contract of insurance with SunTrust

including insurance contracts, Virginia Farm Bureau Mut. Ins. Co. v. Williams, 677 S.E.2d 299, 302 (Va. 2009).

33

Mortgage; thus, it is premature to consider whether SunTrust Mortgage properly and timely raised the affirmative defense of first material breach. I would not, however, disagree with the majority's reasoning as to the failure of SunTrust Mortgage's affirmative defense were the counterclaim properly before the Court on its merits. And I would further conclude that it would be unconscionable to require United Guaranty to continue to provide insurance coverage on loans for which SunTrust Mortgage is excused from paying renewal premiums.

Finally, I would affirm the ruling of the district court on its sanctions ruling as being within the scope of discretion afforded to district courts on such matters.

In summary, I respectfully dissent from the majority's affirmance of summary judgment on SunTrust Mortgage's claim against United Guaranty, concur with the reversal of summary judgment against United Guaranty on its counterclaim, dissent from the majority's affirmance of the granted motion in limine, and concur with the majority's affirmance of the ruling on sanctions.

34